Royce E. WISENBAKER et al., Appellant,

v.

JOHNNY FOLMAR DRILLING COMPANY,
Inc., et al., Appellees.

No. 7197.

Court of Civil Appeals of Texas.
Texarkana.

March 15, 1960.

Rehearing Denied April 5, 1960.

**466**

Spruiell, Lowry, Potter, Lasater & Guinn, Tyler, for appellant.

Malone, Lipscomb, Seay & Gwinn, Dallas, Ramey & Ramey, Sulphur Springs, for appellee.

PER CURIAM.

This is a venue case. We have concluded that the trial court erred in overruling appellants' pleas of privilege and the judgment of the trial court is reversed and rendered with instructions as hereinafter stated.

■ Appellees in their brief state the nature of the case as follows:

"This is an appeal from an Order of the 115th Judicial District Court of Wood County, Texas overruling Pleas of Privilege of the non-resident cross-defendants, Royce E. Wisenbaker, Robert A. Fix and Patrick D. de Pamphilis, of Smith County, Texas, and Walter F. Hicks, Jr., of Grayson County, Texas, Cross Defendants being sued as individuals and as co-partners doing business under the firm name of Wisenbaker, Fix and Associates. (For convenience of the Court, Appellee refers to Cross Defendants as "Wisenbaker, et al" which is the same designation used by Appellant).

"The City of Quitman (not a party to this appeal) filed suit against Appellee Johnny Folmar Drilling Company, Inc., (hereinafter called "Folmar") and Appellee Old Colony Insurance Company, surety on Folmar's performance bond (hereinafter called "Old Colony"), for breach of contract to drill a water well which would produce a specified quality of water for use by the City of Quitman. It is alleged that the subject well is defective in that the iron content is too high. Folmar and Old Colony filed answers and cross actions against Wisenbaker, et al, alleging they were employed by the City of Quitman to prepare all the necessary contract papers to be used in connection with the drilling of the proposed well; that the papers so prepared by Wisenbaker, et al, constitute a contract in writing, to which Wisenbaker, et al, became a party and that said contract specifically provided that the drilling operations were to be performed in Wood County, Texas.

"Folmar and Old Colony further allege that Wisenbaker, et al were actively negligent and careless in the performance of their duties as spelled out in the contract instruments; that such negligence was a proximate cause of the loss.

"The City of Quitman sued Folmar as contractor and Old Colony as surety on a contractor's performance bond which is on file in Wood County, Texas".

The contract papers evidencing the contract between the City of Quitman and Folmar are made up of several parts. Under the contract it was agreed that Folmar would drill a test well (small diameter) to a depth sufficient to test the Carrizo Springs formation approximately 400 feet. A sample of water was to be taken by contractor and tested by a reputable laboratory chosen by contractor. If the laboratory test was acceptable to the City, Folmar was to proceed to drill the permanent large bore water well at this location. He covenanted and guaranteed that the water produced from this well would be equal to the laboratory test of water taken from the test hole.

The test hole was drilled and the water analyzed by Curtis Laboratory. This analysis was satisfactory to the City. Folmar proceeded to drill the water well. On completion of this well it did not produce water of the same quality. The laboratory test of water from the test hole was .2 parts per million iron. The completed water well produced water 2.02 parts per million iron. This was too much iron and the water could not be used by the City.

The City sued for damages sustained by it due to the breach of covenant and guaranty by Folmar that the finally completed well would produce water meeting the required tests.

Folmar and Old Colony filed a cross action against Wisenbaker et al., alleging among other things to the effect that: Wisenbaker et al. were employed by the City as its engineers, as specified by the contract and that under the contract between the City and Folmar the engineers were to exercise considerable judgment and discretion to see to it that the contractor performed his obligations. The fault alleged against Wisenbaker et al. was to the effect:

(1) That two samples of water were taken from the test hole, one by Folmar (which was required by the contract) and a second by Mr. Crofford, the City Water Superintendent, (which was not provided for in the contract). Folmar caused his sample to be tested in Curtis Laboratory in Houston, which reported .2 parts per million iron. Crofford sent his sample to the Department of Public Health at Austin to be tested. The City received a telegram from the State Health Department some four days later reporting .6 parts per million iron. Old Colony and Folmar alleged that Wisenbaker et al. were negligent in allowing Folmar to commence and complete the water well without notifying him of the discrepancy in the water test made at Austin, that if he had known of the discrepancy in the two tests, he would have made additional tests and would thereby have discovered that the well could not meet the guarantee.

(2) When the well was finally completed, it was alleged that Wisenbaker et al. directed the City to pay Folmar the balance of the contract price without first having an analysis of the water. That if this analysis had been made, it would have been disclosed that there was an excessive amount of iron such that Folmar's covenants and guarantee could not be complied

with, and he would not have been entitled to receive final payment; that Wisenbaker et al. did not perform their duty and were negligent in directing final payment without having this test.

The written contract between the City of Quitman and Folmar, states that the Party of the First Part is the City of Quitman and that the Party of the Second Part is Folmar and "that the parties to these presents have executed this agreement". Wisenbaker et al. did not sign the contract and are not named as parties to the contract.

Provisions of the contract also clearly show that the engineers Wisenbaker et al. were employed as engineers and agents of the City of Quitman. We quote from some of said provisions as follows:

"Engineer: The word 'Engineer' in these specifications shall be understood as referring to Wisenbaker, Fix & Associates, 1500 Peoples National Bank Building, Tyler, Texas, *Engineer of the Owner, or such other Engineer, Supervisor or Inspector as may be authorized by said Owner to act in any particular position.*" (Emphasis added.)

\*   \*   \*   \*   \*   \*

"Owner, contractor and engineer. The owner, the contractor and engineer are those mentioned as such in the agreement. They are treated throughout the contract documents as if each were of the singular number and masculine gender. *The Engineer shall be understood to be the engineer of the owner or his duly authorized representative.*" (Emphasis added.)

\*   \*   \*   \*   \*   \*

"Adequacy of Design. *It is understood that the Owner believes it has employed competent engineers and designers.* It is, therefore, agreed that the Owner shall be responsible for the adequacy of the design, sufficiency of the ·Contract Documents, etc. \* \* \*" (Emphasis added.)

The contract in question does not provide any compensation to be paid to the Engineers, Wisenbaker, et al. They of course were employed by the City of Quitman and undoubtedly are looking to the City for payment for their services.

We have carefully analyzed the written contract papers in question, as well as the letter of April 12, 1957 from Wisenbaker et al. to Folmar, and we are convinced that Wisenbaker, et al. are neither formal nor actual parties to the contract between the City of Quitman and Folmar in question. It is also clear that the mere fact that Wisenbaker et al. prepared the written contract papers would not make them parties to the contract. Appellees' contention that venue of the cross action against Appellants, Wisenbaker, et al. is maintainable in Wood County, Texas under subdivision 5 of Art. 1995, Vernon's Ann. Civ.St., is deemed to be without merit and is overruled.

■ Also the pleas of privilege of appellants should have been sustained because the appellees failed to make out a prima facie case against appellants Wisenbaker, et al.

Wisenbaker et al. were clearly agents and employees of the City of Quitman. The acts of negligence charged against Wisenbaker et al. were not acts or omissions involving harm to the person of Folmar or to any of his tangible belongings, but affected only the pecuniary interests of Folmar. The rules of law applicable to such a situation are stated in Restatement of the Law, Agency, Sec. 357, pages 781, 2 & 3 as follows:

"Sec. 357. Negligence Failure to Act Causing Harm to Pecuniary Interests.

"An agent who negligently performs or who fails to perform a duty to his principal is not thereby liable for harm resulting to the pecuniary interests of a third person, although the agent realizes that there is an unreasonable risk that such harm will result.

"Comment:

"a. The rule stated in this Section is a particular application of the more general rules stated in the Restatement of Torts, dealing with liability for interference with the pecuniary interests of others, not involving harm to their persons or tangible belongings.

\* \* \* \* \* \*

"Illustrations:

"1. A, an attorney, is employed by P to report upon the condition of the title of Blackacre. A negligently fails to discover that B has a recorded mortgage upon it. A reports to P that the title is good. Upon the strength of this, P obtains a loan from T, a bank, which pays the money relying upon the written report of A to P. A is not liable to T even though A had reason to believe that some person would be likely to act upon his statement.

"2. A is employed by the B corporation to audit the books of the company and to make a report to it. A audits the books carelessly, thus making a statement of greater assets than the company has. A knows that the report of the audit will be generally distributed. Upon the strength of the audit, T purchases shares in the company. A is not liable to T".

■ If appellees had a valid cause of action against appellants (which we think they did not have for the reasons above stated), we are of the further view that the evidence is wholly insufficient to show that appellants were guilty of any acts of active or passive negligence (under subdivisions 9 or 9a of Art. 1995, V.A.T.S.) *occurring in Wood County, Texas.*

■ Furthermore if appellees had a valid cause of action against appellants (which we think they did not have) such

appellants would not be necessary parties to the suit of the City of Quitman against Folmar, and venue would not be maintainable in Wood County, Texas against appellants, under subdivision 29a of Art. 1995, V.A.T.S. See Ladner v. Reliance Corporation, Tex., 293 S.W.2d 758 and authorities therein cited.

We hold that appellants' pleas of privilege were well taken. The judgment of the trial court is reversed and judgment is here rendered in favor of appellants with instructions that appellees' cross-action against cross-defendants Wisenbaker, Fix and de Pamphilis be transferred to the District Court of Smith County, Texas, and that appellees' cross-action against cross-defendant Hicks, Jr., be transferred to the District Court of Grayson County, Texas.

Reversed and rendered with instructions.